IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| BEVERLY K. GODINEZ, | ) | 4:06CV3042 |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of the | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

The plaintiff, Beverly K. Godinez, who appears pro se, contends that a decision of the defendant, the Commissioner of the Social Security Administration, to deny her disability insurance benefits and supplemental security income is unfair. I find, after having carefully reviewed the plaintiff's filings and the voluminous (743-page) administrative record, that the Commissioner's decision should be affirmed.

## *I.  BACKGROUND*

Godinez, who is now 46 years old, applied for disability insurance benefits on February 6, 2002, alleging that she became disabled on November 30, 2000, due to fibromyalgia and repetitive motion syndrome in her wrists.[1] (Tr. 424, 439.) On that same date, she applied for supplemental security income, alleging that she became disabled on August 13, 1996. (Tr. 677.) Godinez had also claimed in an earlier application for disability insurance benefits, filed on May 27, 1997, that she was disabled as of August 13, 1996, because of fibrosis, fibromyalgia, muscle problems,

---

[1] Godinez complained that the fibromyalgia "depress[ed] her body" and resulted in a "lack of energy," caused shortness of breath and "lots of pain" in her chest and back, and made her feet hurt after standing for long periods. She also complained of numbness in her hands. (Tr. 439.)

lung problems, depression, arthritis, stomach problems, and sinus problems.[2] (Tr. 80, 106.) That earlier application was denied initially on August 25, 1997, and also on reconsideration on October 15, 1997. (Tr. 34, 41.) Godinez then requested an administrative hearing, which apparently was held on June 4, 1998.[3] Thereafter, on October 5, 1998, the administrative law judge ("ALJ") issued a decision finding that Godinez was not disabled because, although she had not performed any substantial and gainful work since August 13, 1996, and had severe impairments consisting of fibromyalgia, mechanical back pain, Raynaud's phenomenon, obesity, and recurrent pulmonary problems, Godinez was able to perform her past relevant work as a telephone solicitor. (Tr. 351-367.) It does not appear that Godinez requested the Appeals Council to review the ALJ's adverse decision.

With regard to the applications at issue in this appeal, a notice of denial was issued on February 27, 2002. It stated in part:

> You said that you are unable to work due to fibromyalgia, repetitive motion syndrome in your wrists, shortness of breath, foot pain, and lack of energy. The medical evidence indicates that although you have discomfort at times, you are able to move about without severe nerve, organ, or muscle damage. Based on the overall findings, your impairments are not severe enough to prevent you from performing work activity.

(Tr. 373.) Godinez filed a request for reconsideration on March 12, 2002. (Tr. 377.) The applications were denied a second time on April 17, 2002. (Tr. 379.) The second denial notice stated in part:

---

[2] It appears that Godinez also applied for supplemental security income on May 29, 1997, but that application is not contained in the transcript.

[3] The transcript in this case does not include transcribed testimony from that hearing. However, according to the ALJ's decision, testimony was provided by Godinez, who was represented by counsel, and by a vocational expert under contract with the agency. (Tr. 354.)

> You said that you are unable to work because of fibromyalgia, repetitive motion syndrome in your wrists, asthma, migraine headaches, and seizures.
>
> The medical evidence shows that you have a history of receiving treatment for the above conditions. A recent exam indicated that you had no significant painful trigger points, and your lungs were clear. A CT scan of your head done on 3/12 was normal, and you have not been diagnosed as having a seizure disorder. Although you have a history or repetitive motion syndrome, you are still able to crochet and do crafts. We have determined that your condition does not significantly limit your ability to engage in work activities.

(Tr. 379.)

Godinez requested an administrative hearing on June 10, 2002. (Tr. 384.) The hearing commenced on March 4, 2004, before the same ALJ as before, but was continued in order to give Godinez an opportunity to obtain counsel and to produce additional documents. (Tr. 695-703.) The hearing was reconvened on January 19, 2005, but Godinez was still unrepresented. The ALJ (the same one again) decided to proceed with the hearing, and testimony was received from Godinez and from a vocational expert under contract with the agency (testifying by phone). (Tr. 704-743.) On April 15, 2005, the ALJ issued a decision finding that Godinez was not disabled. (Tr. 19-30.)

Godinez filed a request for further review on August 8, 2005. (Tr. 17.) The Appeals Council found that the request was not filed on time, but that there was a good reason for the delay. (Tr. 14.) The Appeals Council also found, however, that there was no reason under its rules to review the ALJ's decision, and it denied the request for further review on December 27, 2005. (Tr. 14.) Godinez's action was timely filed in this court 65 days later, on March 2, 2006. (Filing 1.)

3

### *A. Findings by the ALJ*

The ALJ evaluated Godinez's claims according to the five-step sequential analysis prescribed by the social security regulations. See 20 C.F.R. §§ 404.1520 and 416.920.[4] Among other things, he found (1) that Godinez had not engaged in any substantial gainful activity since December 31, 2001, but had performed work prior to that date; (2) that Godinez has medically determinable impairments consisting of a chronic pain disorder (fibromyalgia), status post rotator cuff tear, hip and feet pain, and major depression disorder; (3) that while these impairments are "severe" under the regulations,[5] they do not meet or equal one of the impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1; (4) that Godinez lacks the residual functional capacity to perform any of her past relevant work; and (5) that Godinez retains the capacity to perform certain sedentary occupations which exist in significant numbers in the national and regional economies, such as cashier, interviewer, and information clerk, and thus is not under a disability.

---

[4] "At the first step, the claimant must establish that she has not engaged in substantial gainful activity. The second step requires that the claimant prove she has a severe impairment that significantly limits her physical or mental ability to perform basic work activities. If, at the third step, the claimant shows that her impairment meets or equals a presumptively disabling impairment listed in the regulations, the analysis stops and the claimant is automatically found disabled and is entitled to benefits. If the claimant cannot carry this burden, however, step four requires that the claimant prove she lacks the residual functional capacity to perform her past relevant work. Finally, if the claimant establishes that she cannot perform her past relevant work, the burden shifts to the Commissioner at the fifth step to prove that there are other jobs in the national economy that the claimant can perform. See Gonzales v. Barnhart, 465 F.3d 890, 894 (8th Cir. 2006).

[5] "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521(a) and 416.921(a).

4

### B. *Issues on Appeal*

Godinez does not identify any specific issues, but generally questions whether her claim was judged fairly by the ALJ at each of the 5 steps and argues that she is aware of other people who have less severe impairments than her but who receive disability payments. My reasons for affirming the Commissioner's decision are briefly explained in the discussion which follows.

## II.  DISCUSSION

A denial of benefits by the Commissioner is reviewed to determine whether the denial is supported by substantial evidence on the record as a whole. Hogan v. Apfel, 239 F.3d 958, 960 (8th Cir. 2001). "Substantial evidence" is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. Id., at 960-61; Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000). Evidence that both supports and detracts from the Commissioner's decision must be considered, but the decision may not be reversed merely because substantial evidence supports a contrary outcome. See Moad v. Massanari, 260 F.3d 887, 890 (8th Cir. 2001).

This court must also review the decision of the Commissioner to decide whether the proper legal standard was applied in reaching the result. Smith v. Sullivan, 982 F.2d 308, 311 (8th Cir. 1992). Issues of law are reviewed de novo. Olson v. Apfel, 170 F.3d 820, 822 (8th Cir. 1999); Boock v. Shalala, 48 F.3d 348, 351 n.2 (8th Cir. 1995); Smith, 982 F.2d at 311.

### A. *Step One*

The ALJ found that Godinez admitted working after her alleged onset date of disability as a meatpacker, working 60 hours per week from June 2000 to December

2001, and also as a housekeeper, working 30 hours per week during September and October 2001. (Tr. 24.) Although this fact finding is not challenged by Godinez, it is not supported by the record and is inconsistent with the ALJ's further finding that Godinez earnings totaled $14,436.34 in 2000 but only $4,679.95 in 2001. (Tr. 24.) The work history information provided by Godinez is also inconsistent, but she appears to have been employed as a meatpacker from June to November 2000, as a housekeeper from September to October 2001, and again as a meatpacker (but for a different employer) from November to December 2001. (Tr. 440, 449-450, 460-463.) It is only in that last position that Godinez may have worked 60-hour weeks. The ALJ's ultimate step-one finding that Godinez was engaged in substantial gainful activity until December 31, 2001, is not directly challenged, and, in any event, is immaterial if the ALJ's step-five finding of no disability is correct.

### B. *Step Two*

There is no appealable issue at step two in this case because the ALJ implicitly rejected the earlier agency determinations that Godinez does not have any severe impairments or combination of impairments.[6] Even so, Godinez complains that the ALJ failed to consider every impairment, and, in particular, she mentions "restless leg syndrome,[7] asthma,[8] sleep disorder, mood changes, irritable bowel, depression,[9] . . .

---

[6] "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001).

[7] I find nothing in the record to indicate that Godinez previously complained of restless leg syndrome. Indeed, it is not included in a listing of "current diagnoses" that Godinez submitted to the Commissioner on June 9, 2003. In this listing, Godinez states that she has been diagnosed with (1) chronic fatigue (fibromyalgia); (2) chronic widespread pain; (3) mild osteoarthritis, multiple sites; (4) post-traumatic right shoulder pain; (5) chronic mid-back and low-back pain; (6) chronic plantar fascitis; (7) chronic headaches; (8) irritable bowel syndrome; (9) acrocyanosis (blue fingers);

6

[and] chronic headaches." [10] (Filing 25 at 2.) Although not every complaint was discussed by the ALJ, any oversight in this regard was harmless error.

### C. Step Three

Godinez states that she does not know what is in Appendix 1. Basically, it contains a "Listing of Impairments" that "describes for each of the major body systems impairments that [the Commissioner] consider[s] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. §§ 404.1525(a) and 416.925(a). Without going into detail, I am satisfied that the ALJ correctly determined that Godinez's impairments, whether severe or non-severe, and whether considered singularly or in combination, did not meet or medically equal the criteria of a listing.[11]

---

(10) cognitive disorder; (11) chronic mood disorder and insomnia; (12) mental and physical abuse; (13) learning disability (grade school); (14) asthma; (15) depression; and (16) soft tissue injury. (Tr. 502.)

[8] Asthma was discussed, and possibly should have been listed as a severe impairment by the ALJ, who stated that while "evidence supports some restrictions from airborne irritants, the record does not document chronic breathing problems that would contribute to a complete inability to work." (Tr. 26.)

[9] The ALJ actually found Godinez's depression to be a severe impairment. (Tr. 24.)

[10] The ALJ specifically rejected this complaint, finding that Godinez "complains of headaches, and vision and hearing problems, but these impairments are not medically documented in the record." (Tr. 27.)

[11] Regarding the diagnosis of major depression disorder, the ALJ made required findings that Godinez has mild limitations in activities of daily living, in social functioning, and in concentration, persistence or pace, and no episodes of decompensation. (Tr. 27.) See 20 C.F.R. §§ 404.1520a and 416.920a.

7

### *D.  Step Four*

At step four, the ALJ is required to evaluate whether or not the claimant is able to return to her past relevant work.  See Martin v. Sullivan, 901 F.2d 650, 652 (8th Cir. 1990).  This is done by assessing the claimant's residual functional capacity ("RFC") "based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'"  Goff v. Barnhart, 421 F.3d 785, 793 (8th Cir. 2005) (quoting Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004)).

In this case, the ALJ found that Godinez's obesity was "reasonably likely to contribute to a partial erosion of the claimant's physical ability to work . . . [and] may also contribute to her back pain" (Tr. 25); that Godinez "has some reasonable exertional limits due to back pain, but not so much that all work less than medium work is precluded" (Tr. 25); that "the objective records do not support a serious limitation" in Godinez's use of her hands (Tr. 26); that "the record does not document chronic breathing problems that would contribute to a complete inability to work" (Tr. 26); that Godinez "has some psychological limits preventing the performance of higher skilled work, but does not have any mental impairment that precludes all unskilled work (Tr. 26); that Godinez's complaints of headaches and vision and hearing problems "are not medically documented in the record" (Tr. 27); and that Godinez's fibromyalgia "contributes to a partial erosion of her physical ability to perform work" (Tr. 26).

The ALJ found that Godinez has the residual functional capacity "to perform work consisting of lifting ten pounds occasionally and five pounds frequently; sitting/standing six hours a day with the option to alternate positions on an hourly basis; no work should require the right hand to be used above the shoulder level or reaching behind the back; all work should avoid the use of ladders, scaffolds, or similar items; all work should avoid exposure to concentrated dust, fumes, and other

common irritants; and all work should avoid stooping, kneeling, or crawling." (Tr. 27-28.) The ALJ's assessment of Godinez's RFC was significantly more restrictive than the physical RFC assessments that were made by state agency physicians in connection with Godinez's 1997 application for disability insurance benefits.[12] The ALJ explained that while he was "inclined to give significant weight to the state agency physicians since they are considered 'experts' under the Regulations[,]" they "did not have the benefit of evidence admitted after their review [of medical records] and the pertinent testimony at the hearing." (Tr. 28.)

Although the ALJ bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence, this is a medical question. See Masterson v. Barnhart, 363 F.3d 731, 737-38 (8th Cir. 2004). Thus, some medical evidence must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's ability to function in the workplace. See id. "In evaluating a claimant's RFC, the ALJ is not limited to considering medical evidence, but is required to consider at least some supporting evidence from a professional." Id. (citing 20 C.F.R. § 404.1545(c); Baldwin v.

---

[12] Those RFC assessments included: (1) an August 22, 1997 assessment which lists a primary diagnosis of fibromyalgia and a secondary diagnosis of Raynaud's phenomenon, and which opines that Godinez can lift 50 pounds occasionally and 25 pounds frequently, can either stand and walk or else sit for 6 hours during a normal workday, can push and pull without limitation, and only needs to avoid concentrated exposure to extreme cold (Tr. 222-229); (2) an October 13, 1997 affirmation of the preceding RFC (Tr. 232); and (3) a November 15, 1997 assessment which lists a primary diagnosis of fibromyalgia and secondary diagnoses of bilateral SI joint sclerosis and bilateral hand arthritis, and which opines that Godinez can lift 20 pounds occasionally and 10 pounds frequently, can either stand and walk or else sit for 6 hours during a normal workday, can push and pull without limitation, can only occasionally crouch or crawl, and needs to avoid concentrated exposure to extreme cold, vibration, and hazards (Tr. 241-248). The administrative record does not contain any RFC assessment by a state agency physician regarding Godinez's 2002 applications.

Barnhart, 349 F.3d 549, 556 (8th Cir.2003)). The ALJ satisfied this requirement in this case by considering the reports of several medical sources, as detailed in the ALJ's decision.

To assess a claimant's credibility, the ALJ must consider all of the evidence, including prior work records and observations by third parties and doctors regarding daily activities, the duration, frequency, and intensity of pain, precipitating and aggravating factors, the dosage, effectiveness, and side effects of medication, and functional restrictions. Lowe v. Apfel, 226 F.3d 969, 971-72 (8th Cir. 2000) (citing Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984)). The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole. Id. at 972. Where adequately explained and supported, credibility findings are for the ALJ to make. Id. (citing Tang v. Apfel, 205 F.3d 1084, 1087 (8th Cir.2000)).

The ALJ is not required to discuss methodically each Polaski consideration, so long as he acknowledges and examines those considerations before discounting the subjective complaints. Id. (citing Brown v. Chater, 87 F.3d 963, 966 (8th Cir.1996)). Even so, the ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints. Masterson, 363 F.3d at 738. It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he considered all of the evidence. Id., at 738-39.

The ALJ's decision in this case reflects that he considered all of the evidence, and, while giving some credence to Godinez's complaints of pain, that he rejected her claim of disability as being inconsistent with her work history, her medical history, and her activities of daily living. I find no error in this regard. To the contrary, it appears that the ALJ gave Godinez every benefit of the doubt in assessing her RFC.

### *E. Step Five*

Once the RFC is determined, the issue at step five is whether the claimant is able to perform other work in the national economy in view of her age, education, and work experience. Harris v. Barnhart, 356 F.3d 926, 929 (8th Cir. 2004). Generally, if the claimant suffers from nonexertional impairments that limit her ability to perform the full range of work described in one of the specific categories set forth in the medical-vocational guidelines, the ALJ is required to utilize testimony of a vocational expert. Draper v. Barnhart, 425 F.3d 1127, 1132 (8th Cir. 2005).

A vocational expert was called to testify in this case. She opined that while a person of Godinez's age with the same education, work history, and RFC (limited to sedentary work with a sit/stand option) would not be able to perform Godinez's past relevant work, the person would be able to work as a cashier, interviewer, or information clerk, and that the respective numbers of such occupations are 3,000, 1,200, and 750 in this region, and 69,000, 22,000, and 15,000, in the nation. (Tr. 738-740.) The ALJ was entitled to rely upon this testimony to conclude that Godinez is not disabled. See Guilliams v. Barnhart, 393 F.3d 798, 804 (8th Cir. 2005) (because the vocational expert was presented with a proper hypothetical, her testimony that there were significant numbers of jobs that the claimant could perform despite his limitations constituted substantial evidence supporting the ALJ's determination that the claimant was not disabled).

### *III. CONCLUSION*

For the reasons stated, I find that the Commissioner's decision is supported by substantial evidence on the record as a whole and is not contrary to law.

Accordingly,

11

IT IS ORDERED that the decision of the Commissioner is affirmed. Judgment will be entered by separate document.

May 15, 2007.                             BY THE COURT:

                                          s/ *Richard G. Kopf*
                                          United States District Judge